UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION
CASE NO. 21-CV-23148-COOKE

LEIGH ROTHSCHILD,

    Plaintiff,

v.

GREAT NOTHERN INSURANCE COMPANY,

    Defendant.
_____/

**ORDER DENYING PLAINTIFF'S AMENDED *DAUBERT* MOTION TO EXCLUDE AND/OR LIMIT THE TESTIMONY OF JEFFREY BRADLEY [ECF NO. 34]**

THIS CAUSE came before the Court on Plaintiff, Leigh Rothschild's ("Plaintiff" or "Rothschild"), Amended *Daubert* Motion to Exclude and/or Limit the Testimony of Jeffrey Bradley [ECF No. 34 ("Motion")]. This matter was referred to the undersigned pursuant to an Order of Referral for all non-dispositive pretrial matters by the Honorable Marcia G. Cooke, United States District Judge [ECF No. 5]. *See* 28 U.S.C. § 636(b)(1)(A)

THIS COURT has reviewed the Motion, the Response and Reply thereto [ECF Nos. 49, 54], as well as the documents submitted in support of the parties' filings, the pertinent portions of the record, and all relevant authorities.

    **I.    FACTUAL AND PROCEDURAL BACKGROUND**

This is an action for breach of contract brought by an insured homeowner against his property insurer, Defendant, Great North Insurance Company ("Defendant" or "Great Northern"). *See* ECF No. 1-1 at 12-15 ("Complaint"). According to the allegations in the Complaint, Defendant issued an insurance policy for Plaintiff's property located at 1574 NE

Quayside Terrace, D18, Miami, FL 33138 (the "Property"). Compl. at ¶¶ 4, 6. Plaintiff alleges that the Property was damaged and incurred a loss under the Policy on November 8, 2020, as a result of storm damage from Tropical Storm Eta.[1] *Id*. at 8. Plaintiff claims that Defendant breached the Policy by failing to issue payment in full for the damages to the Property. *Id*. at ¶¶ 12, 18.

On March 29, 2021, Plaintiff filed a Complaint against Defendant in the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida. *See id*. Defendant filed an Answer and Affirmative Defenses in state court on August 23, 2021 and then removed this action to this Court on August 31, 2021. [ECF No. 1].

On September 19, 2021, the Court entered an Order Setting Civil Trial Date and Pretrial Deadlines [ECF No. 8], setting this case for trial during the period beginning on November 7, 2022. Pursuant to that Order, the deadline for the filing of *Daubert* motions was July 15, 2022. *Id*. Numerous additional motions for enlargement of pretrial deadlines ensued, including Plaintiff's July 15, 2022, Motion for Extension of Time to File Summary Judgment and *Daubert* Motions [ECF No. 27], in which Plaintiff sought an extension to July 29, 2022, for the filing of *Daubert* motions.[2] Before the Court ruled on that Motion, Plaintiff filed the original *Daubert* Motion to Strike on July 22, 2022. [ECF No. 32].

---

[1] Plaintiff has requested leave to amend the Complaint three times to change the date of the loss and its alleged causes. [ECF Nos. 24, 36, 68]. The Court rejected Plaintiff's first two requests for lack of good cause shown. [ECF Nos. 26, 43]. Plaintiff's third request is not ripe for adjudication.

[2] The Court notes that in the July 15, 2022 Motion [ECF No. 27], Plaintiff misstates the then-current deadline for the filing of *Daubert* motions as July 22, 2022, whereas the deadline was actually July 15, 2022, pursuant to the Court's September 19, 2021 Scheduling Order. [ECF No. 8].

After the Court denied Plaintiff's original *Daubert* Motion for failure to comply with Local Rule 7.1(a)(3) [ECF No. 33], on July 25, 2022, Plaintiff filed the Amended Motion now before the Court seeking to exclude the Report and opinions of Defendant's engineering expert, Jeffrey Bradley. [ECF No. 34]. The Court subsequently denied, as moot, Plaintiff's Motion for Extension of the deadline to file *Daubert* motions on the grounds Plaintiff had already filed the Amended *Daubert* Motion. [ECF No. 35]. Defendant filed its Response to the Motion on August 8, 2022, and Plaintiff filed his Reply on August 15, 2022. [ECF Nos. 49, 54].

The Motion is now fully briefed and ripe for adjudication.

## II. ISSUES RAISED BY THE PARTIES

In the Motion, Plaintiff argues that Defendant's expert engineer, Jeffrey Bradley, does not meet the requirements for expert testimony set forth in *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993), because his opinions are based only on his training, experience, "eye-balling," and mere speculation. *See* Mot. at 6. Plaintiff further asserts that the "process of elimination" methodology employed by Mr. Bradley is not an acceptable scientific methodology. *Id*. Finally, Plaintiff contends that any opinions in Mr. Bradley's Report regarding weather patterns and rainfall must be excluded because Mr. Bradley is not a weather expert, and his opinions regarding weather only relay information he found on the internet without conducting an independent assessment of the information. *Id*. at 7.

In Response, Defendant first argues that Plaintiff's Motion should be denied because it was not filed by the Court-ordered deadline for *Daubert* Motions and Plaintiff has not shown good cause for the late filing. *See* Resp. at 1. Defendant also argues that a review of Mr. Bradley's complete testimony and educational background shows that he is more than

3

qualified to testify regarding the cause of damage to the Property, that his methodology is reliable, and that his testimony will help the trier of fact. *Id*. at 2. Defendant further asserts that there is ample legal authority finding that a "visual inspection" may be a sufficiently reliable methodology under *Daubert* and that an expert's reliance on his training and experience can be sufficient to establish admissible expert testimony. *Id.* at 10. And Defendant contends that an engineer's opinion regarding the cause of property damage may be reliable when based, in part, on "the process of elimination." *Id*. at 11 (quoting *Grove Harbour Marina & Caribbean Marketplace, LLC v. Rockhill Ins. Co.,* 2020 WL 5534287 at *4 (S.D. Fla May 18, 2020) (Otazo-Reyes, J.)). Lastly, Defendant points out that Mr. Bradley does not purport to be a weather expert and has not expressed any meteorological opinions. *Id*. at 3, 19. Rather, he conducted research based on government weather databases and relied on that research to determine the amount of precipitation at the Property on the dates relevant to Plaintiff's reported property damage. *Id*.

In his Reply, Plaintiff asserts that he did proffer good cause for an extension of time in his Motion for Extension of Time [ECF No. 27], in which he requested additional time to file *Daubert* motions due to a backlog at Veritext Court Reporting for preparation of deposition transcripts. Reply at 1. Plaintiff also asserts that the Motion can alternatively be interpreted as a motion in limine to limit Mr. Bradley's testimony because the Motion was filed before the deadline for the filing of motions in limine. *Id*. at 2. Plaintiff also reasserts that Mr. Bradley's weather-related testimony must be excluded because it is based on nothing other than findings from a Google search, that Mr. Bradley's methods of "eye-balling" and using the process of elimination do not meet the reliability requirements of *Daubert*, and that

4

Bradley's opinion is "merely based on his training and experience" and must therefore be excluded. *See id.* at 2-5.

### III. APLICABLE LEGAL STANDARDS

#### A. *Analyzing The Admissibility Of Expert Testimony*

Federal Rule of Evidence 702 governs the admissibility of expert testimony. Pursuant to Rule 702, an expert witness may testify in the form of an opinion if: "(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702. The Court serves as a gatekeeper to the admission of scientific and technical expert evidence. *Quiet Technology DC-8 v. Hurel-Dubois UK Ltd.*, 326 F.3d 1333, 1340 (11th Cir. 2003) (citing *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 594–95 (1993)). The Court's role is especially significant given that an expert's opinion can be both powerful and quite misleading. *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004). Thus, the party offering the expert testimony bears the burden of laying the proper foundation, and that party must demonstrate admissibility by a preponderance of the evidence. *See Rink v. Cheminova*, 400 F.3d 1286, 1291-92 (11th Cir. 2005).

In determining the admissibility of expert testimony, the Court engages in a three-part inquiry to consider whether:

> (1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology used by the expert in reaching his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert*; and (3) the testimony assists the trier of fact to understand the evidence or to determine a fact in issue through the application of scientific, technical or specialized expertise.

5

*City of Tuscaloosa v. Harcros Chemicals, Inc.*, 158 F.3d 548, 562 (11th Cir. 1998) (citing *Daubert*, 509 U.S. at 589). The Court of Appeals for the Eleventh Circuit refers to each of these requirements as the "qualifications," "reliability," and "helpfulness" prongs. *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004). While some overlap exists among these requirements, the Court must analyze each one individually. *Frazier*, 387 F.3d at 1260.

**Qualifications**: An expert may be qualified by knowledge, skill, experience, training, or education. *Easterwood v. Carnival Corp.*, No. 19-CV-22932, 2020 WL 6880369, at *2 (S.D. Fla. Nov. 23, 2020). An expert is not necessarily unqualified simply because his experience does not precisely match the matter at hand. *Id*. So long as the expert is minimally qualified, objections to the level of the expert's expertise go to credibility and weight of the expert's testimony, not its admissibility. *Id*.

**Reliability**: In determining the reliability of an expert's methodology, the Court considers: (1) whether the expert's theory can be and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error of the particular scientific technique; and (4) whether the technique is generally accepted in the scientific community. *Frazier*, 387 F.3d at 1262. This same criteria applies to both scientific opinions and experience-based testimony. *Frazier*, 387 F.3d at 1261-62. (citing *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999)). Even so, the Court is allowed significant flexibility to consider other factors relevant to reliability. *Kumho Tire Co.*, 526 U.S. at 152.

**Helpfulness**: Expert testimony is only admissible if it concerns matters that are beyond the understanding of the average lay person and offers something more than what lawyers can argue in closing arguments. *Webb v. Carnival Corp.*, 321 F.R.D. 420, 425 (S.D. Fla. 2017) (Torres, J.) (quoting *Frazier*, 387 F.3d at 1262–63). While an expert may testify regarding his

opinions on an ultimate issue of fact, "he may not testify as to his opinions regarding ultimate legal conclusions." *Umana–Fowler v. NCL (Bahamas) Ltd.*, 49 F. Supp. 3d 1120, 1122 (S.D. Fla. 2014) (quoting *United States v. Delatorre*, 308 Fed. Appx. 380, 383 (11th Cir. 2009). "[M]erely telling the jury what result to reach is unhelpful and inappropriate." *Umana–Fowler*, 49 F. Supp. 3d at 1122 (citing *Montgomery v. Aetna Cas. & Sur. Co.*, 898 F.2d 1537, 1541 (11th Cir. 1990).

## IV. DISCUSSION

With the foregoing in mind, the Court turns to Plaintiff's Motion, as well as Defendant's argument that the Motion is untimely.

### A. The Timeliness Of Plaintiff's Motion

As a preliminary matter, Defendant argues that Plaintiff's Motion should be denied as untimely because it was filed after the Court-ordered deadline for *Daubert* motions. Resp. at 5. The Court agrees that the timing of Plaintiff's Motion is problematic, and the chain of events in the record leading to the filing of the Motion only serves to confuse matters. Nevertheless, the Court observes that the original Motion was filed within the time frame sought in Plaintiff's motion, in which Plaintiff requested an extension of the deadline for the filing of *Daubert* motions up to July 29, 2022. *See* ECF No. 27. The Court also notes that Plaintiff made a showing of good cause for the need for that extension by submitting evidence that he was unable to obtain necessary deposition transcripts from the court reporter. And, importantly, when the Court later denied as moot Plaintiff's requested extension, Judge Altonaga acknowledged that the filing of the Amended Motion, in particular, mooted the need for the extension. *See* ECF No. 35. Thus, the Amended Motion has already been accepted as part of the record, and the Court has already determined that an extension of time

for the filing of the Motion is no longer necessary in light of the filing of the Amended Motion. Therefore, the Court will not deny the Motion on timeliness grounds.

In any event, as discussed below, the Court finds that the Motion should be denied on the merits.

## B. Plaintiff's Challenges To Mr. Bradley's Expert Opinions

The Court considers to the admissibility of Mr. Bradley's expert opinions using the three-part inquiry detailed above. *See City of Tuscaloosa*, 158 F.3d at 562. The Court first addresses Plaintiff's arguments regarding Mr. Bradley's qualifications to provide weather-related testimony before turning to Plaintiff's challenges to Mr. Bradley's other expert opinions.

### 1. Plaintiff's Request To Exclude Mr. Bradley's Weather-Related Opinions

Plaintiff argues that Mr. Bradley is not a weather expert but that in his Report, Mr. Bradley "makes conclusions and expert opinions as to weather patterns." Motion at 7. Therefore, Plaintiff argues Mr. Bradley should be precluded from offering testimony regarding the weather. *Id*. Defendant responds that Mr. Bradley is not offered as a weather expert but, instead, relied on weather data and information in formulating his opinion regarding the cause of the damage to Plaintiff's Property. *See* Resp. at 17.

#### Mr. Bradley Is Not Offered As An Expert On The Weather

Mr. Bradley's Report [ECF No. 34-1] and deposition testimony [ECF No. 32-2] reflect that Mr. Bradley was retained as and is being offered by Defendant as an expert engineer to provide opinions regarding the cause of water damage to Plaintiff's Property. *See* Bradley Report at 1; Bradley Dep. at 10:4-14. Mr. Bradley was not offered as a meteorological expert or an expert regarding weather. Indeed, he stated as much during his deposition. *See* Bradley

Dep. at 23:4-7. Thus, to the extent Plaintiff seeks to exclude Mr. Bradley from offering expert opinions regarding the weather, the requested relief is unnecessary because he is not offered to provide such opinions and, as such, will not be permitted to do so at trial.

<u>Mr. Bradley May Rely On Weather-Related Data
In Formulating His Opinions And May Discuss That Data In His Testimony</u>

However, the fact that he will not be offering expert opinions regarding the weather does not mean that Mr. Bradley may not rely on facts or data regarding the weather in reaching his opinions. Nor does that mean he is precluded from discussing information he learned about the weather when testifying regarding how he reached his opinons in this case.

The basis for an expert's opinion—that is, the type of facts or data an expert may rely upon in reaching their opinion—is evaluated under Rule 703 of the Federal Rules of Evidence. Rule 703 provides:

> An expert may base an opinion on facts or data in the case that the expert has been made aware of or personally observed. If experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject, they need not be admissible for the opinion to be admitted. But if the facts or data would otherwise be inadmissible, the proponent of the opinion may disclose them to the jury only if their probative value in helping the jury evaluate the opinion substantially outweighs their prejudicial effect.

Fed. R. Evid. 703. Experts, thus, are entitled to rely on facts or data in the case that they (1) personally have observed, or (2) of which they have been made aware. *See id.*

"When an expert relies on inadmissible information, Rule 703 requires the trial court to determine whether that information is of a type reasonably relied on by other experts in the field. If so, the expert can rely, under Rule 703, on the information in reaching an opinion." Fed. R. Evid. 702, Advisory Committee's Notes (2000 Amendments); *see also Broussard v. Maples,* 535 Fed. Appx. 825, 828 (11th Cir.2013) (Rule 703 of the Federal Rules of Evidence "allows an expert to base his opinion on facts or data that would otherwise be inadmissible,

9

such as hearsay, if other 'experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion.'") (quoting Fed. R. Evid. 703); *Greenwood Utilities Comm'n v. Mississippi Power Co.,* 751 F.2d 1484, 1495 (5th Cir.1985) ("[W]hen an expert's opinion is based on facts not admissible in evidence the court should make a threshold factual inquiry to determine whether the data providing the basis for the opinion is of a type reasonably relied on by experts in that field to form such opinions.").

There is not much in the way of case law on the subject of standards to be employed in assessing an expert's reliance on inadmissible evidence. One district court has stated, "[t]o serve as the basis of the expert's opinion, evidence need not meet any specific standard of reliability—or even be admissible on its own—so long as 'experts in the particular field would reasonably rely on those kinds of facts or data in forming an opinion on the subject. . . .'" *Burton v. Riverboat Inn Corp.,* No. 4:12–CV–40–WGH–RLY, 2013 WL 6153231, at *8 (S.D. Ind. Nov. 20, 2013) (quoting Fed. R. Evid. 703).

The facts and data upon which an expert may rely in reaching an expert opinion includes the opinions and findings of other experts, if experts in their respective field would reasonably rely on other experts' opinions and findings. *See United States v. Winston,* 372 Fed. Appx. 17, 20 (11th Cir.2010) (noting that "an expert witness may base his testimony on inadmissible information so long as such information is 'regularly relied upon by experts in his field.'") (quoting *United States v. Steed,* 548 F.3d 961, 975 (11th Cir.2008)); *see also Eberli v. Cirrus Design Corp.,* 615 F. Supp. 2d 1357, 1364 (S.D.Fla.2009) ("an expert's testimony may be formulated by the use of the facts, data and conclusions of other experts") (quoting *Ohio Environmental Development Ltd. Partnership v. Envirotest Systems Corp.,* 478 F.Supp.2d 963, 976 (N.D. Ohio 2007)).

When an expert witness relies upon information normally used within their field of specialty, they are not tasked with confirming the accuracy of that underlying information. *Diamond Resorts U.S. Collection Dev., LLC v. Newton Grp. Transfers, LLC*, No. 9:18-CV-80311, 2022 WL 1642865, at *23 (S.D. Fla. Mar. 31, 2022) (Bloom, J.). Instead, the documents or data an expert witness utilizes must only be "of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject." *Platypus Wear, Inc. v. Clarke Modet & Co.*, No. 06-20976-CIV, 2008 WL 4533914, at *5 (S.D. Fla. Oct. 7, 2008) (Torres, J.).

Thus, the question posed is whether the weather-related data relied on by Mr. Bradley is the type of facts or data other experts in the field, here water intrusion expert engineers, would reasonably rely on in forming an opinion on the subject. *See Winston*, 372 Fed. Appx. at 20.

In his Report, Mr. Bradley provides information regarding Tropical Strom Eta's effects on Florida using data he accessed from the National Hurricane Center ("NHC") and National Oceanic and Atmospheric Administration ("NOAA"). [ECF No. 34-1 ("Bradley Report") at 3]. Mr. Bradley testified that he has researched weather for 12 years on almost every project he has completed. Bradley Dep. at 24:10-27:16. He also testified that he used data from the National Weather Service to determine the path and dates of Tropical Storm Eta, as well as the amount of precipitation on those dates. *Id.* at 31:15-23.

According to Mr. Bradley's Report, Tropical Storm Eta resulted in 15 inches of rainfall in South Florida and tropical force wind speeds across much of the state. *Id*. Mr. Bradley also used NOAA data to provide "site-specific precipitation data" on the Property. *Id*. at 4. In particular, he concludes that 8 to 10 inches of rain fell at the Property during the storm, based

on the NOAA rainfall map for the seven-day period of November 7 to November 14, 2020. *Id. See also* Bradley Dep. at 30:15-31:13. His Report concludes: "Although the water intrusion could not be replicated during the study, heavy precipitation during November 8, 2020, Tropical Storm Eta provided sufficient precipitation for the water infiltration." Bradley Report at 6.  In other words, Mr. Bradley opines that heavy rains during Tropical Storm Eta could have contributed to the damage to the Property at issue by supplying enough water to intrude into openings in the Property caused by improper installation of a water proofing layer. *Id.* at 6-7.

Plaintiff ignores Rule 703 and does not argue that experts in the field of engineering and water intrusion damage would not reasonably rely on publicly available meteorological data in forming their opinions. In fact, several district courts in the Eleventh Circuit have found that engineering experts in property insurance disputes regularly rely upon similar publicly available metrological data in forming their opinions. *See SFR Servs. LLC v. Elec. Ins. Co.*, No. 8:19-CV-2013-CPT, 2021 WL 1193284, at *7 (M.D. Fla. Mar. 30, 2021) (declining to exclude engineering expert opinions that were based in part by a review of NOAA weather data); *see also Clena Invs., Inc. v. XL Specialty Ins. Co.*, 280 F.R.D. 653, 662 (S.D. Fla. 2012) (finding that engineering expert possesses sufficient qualifications to testify that damage to the property at issue was caused by hurricane-force winds, where expert relied on weather-related information from the NHC) (Rosenbaum, J.). Perhaps even more telling, the Court notes that Plaintiff's own expert, Mario Farnesi, also relies on publicly available weather data and precipitation maps in formulating his opinions. *See* ECF No. 36-8. This may also be sufficient indicia that reliance on such information is reasonable. *See Paramount Disaster Recovery LLC v. Amica Mut. Ins. Co.*, No. 2:16-CV-14566, 2017 WL 11632214, at *3 (S.D. Fla. Dec. 19, 2017)

("While Plaintiff's expert's methodology is not dispositive, where both experts, who are both engineers, employed a similar process to assess the cause of property damage, that fact suggests at least some degree of reliability.") (Rosenberg, J.); *Clena*, 280 F.R.D. at 663-64.

The Court finds that Mr. Bradley reasonably relied on publicly available weather-related data in forming his opinions and that he is not precluded from discussing that data insofar as it was a basis for his opinion.

To the extent Plaintiff seeks to exclude Mr. Bradley from testifying on the grounds he is not a weather expert, the Motion is denied.

### 2. Reliability Of Mr. Bradley's Methodology

Plaintiff next argues that Mr. Bradley's expert opinion is not reliable because he formed his opinion by "eye-balling" based on his training and experience, without relying on any scientific methodology, industry standard, or publication or elaborating on how his experience led to his conclusion.[3] Mot. at 6; Reply at 5. Plaintiff further argues that Bradley's "process of elimination" method for determining the origins of rust, corrosion, and staining at the Property is not an acceptable scientific methodology and, therefore, his opinions regarding those topics should be excluded. *Id*.

Defendant responds that Mr. Bradley's extensive training and experience allows him to determine the cause of loss without performing any destructive testing in the area where the water damage occurred. Resp. at 13. Defendant also points out that Plaintiff's causation expert used the identical methodology—a strictly visual inspection—which is further evidence of the method's reliability. *Id*. at 15. And Defendant provides legal authority regarding the

---

[3] Plaintiff does not challenge Mr. Bradley's qualifications as an expert in the filed of engineering and water intrusion damage.

admissibility of expert testimony based on the "visual inspection" method used by Mr. Bradley. *Id*. at 14-15.

In reply, Plaintiff reasserts that the "eye-ball" and "process of elimination" methods are not reliable, and that Mr. Bradley cannot render an opinion based off his training and experience, without more. *Id*. at 4-5.

As noted above, in determining whether an expert used reliable methods, the trial judge typically examines "(1) whether the expert's theory can be and has been tested; (2) whether the theory has been subjected to peer review and publication; (3) the known or potential rate of error of the particular scientific technique; and (4) whether the technique is generally accepted in the scientific community." *Frazier*, 387 F.3d at 1261-62 (citing *Quiet Tech.*, 326 F.3d at 1341). These four factors are illustrative, not exhaustive. *Id*. at 1262.

While these same criteria may be used to evaluate the reliability of non-scientific, experience-based testimony, like the proffered testimony here, sometimes other factors may prove more useful. *Id*. at 1262. Accordingly, a district court enjoys flexibility in conducting the reliability analysis. *See United States v. Brown*, 415 F.3d 1257, 1268 (11th Cir. 2005). The applicability of *Daubert* factors in assessing reliability in any "given case will depend . . . on the nature of the issue, the expert's particular expertise, and the subject of his testimony." *Id*. (quoting *Kumho Tire Co., Ltd.*, 526 U.S. at 150) (internal quotations omitted).

Contrary to Plaintiff's argument that Mr. Bradley relied *only* on his experience, Mr. Bradley testified that in addition to relying on his training and twelve years of experience determining the causes of water intrusion damages, in forming his opinions he conducted inspections, observed the damage, took infrared photos to assess dampness and temperature, and conducted tests such as a water spray test. He also testified that part of his methodology

14

does involve a process of elimination in ruling out possible causes of the damages. Bradley Dep. at 38:18-39:3, 42:13-43:9, 66:22-67:7.

Plaintiff objects to the methodology that Mr. Bradley used in determining the cause of the water intrusion damage to the Property. The Court finds that Mr. Bradley's methodology is sufficiently reliable. Mr. Bradley reviewed meteorological data; made a visual inspection of the building and the damaged areas; inspected the areas where water damage was present; conducted a water spray test; observed physical evidence; and relied on his twelve years of experience. While Plaintiff disagrees with the methodology used, "the issue for a *Daubert* methodology challenge is not what it was possible for an expert to do, but rather what it was reasonably necessary for an expert to do in order for his opinions to be reliable." *Travelers Prop. Cas. Co. of Am. v. All-S. Subcontractors*, Inc., 2018 WL 1787884, at *7 (S.D. Ala. Apr. 13, 2018).

The Court therefore agrees with other courts that have considered this issue and found that "an engineer's use of techniques of visual inspection, code review, and reliance on experience and expertise can satisfy the *Daubert* reliability prong." *St. Louis Condo. Ass'n, Inc. v. Rockhill Ins. Co.*, No. 18-21365-CIV, 2019 WL 2013007, at *4 (S.D. Fla. Mar. 11, 2019) (Torres, J.) (quoting *Clena,* 280 F.R.D. at 664 (finding that a structural engineer's "experience as an engineer and his visual inspection of the Property . . . lay a permissible foundation" for his opinions as to causation of roof damage)); *Grove Harbour Marina*, 2020 WL 5534287, at *4 (finding that expert's reliance on his experience to rule out other potential causes of damage was reliable).

Importantly, as Defendant avers, a review of Plaintiff's expert's deposition testimony reflects that Plaintiff's expert engaged the same methodologies—weather research, visual

15

inspection, photographic review, and experience—in reaching his opinions. *See* ECF No. 49-1 ("Farnesi Depo") at 20:1-25; 23:3-24, 52:2-5, 53;16-54:7. As indicated above, this supports a finding that such methodologies are reasonably reliable. *See Paramount Disaster*, No. 2:16-CV-14566, 2017 WL 11632214 at *3 ("While Plaintiff's expert's methodology is not dispositive, where both experts, who are both engineers, employed a similar process to assess the cause of property damage, that fact suggests at least some degree of reliability."); *Clena*, 280 F.R.D. at 663-64.

Moreover, "it is not the role of the district court to make ultimate conclusions as to the persuasiveness of the proffered evidence;" rather, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Quiet Tech*, 326 F.3d at 1341 (citation omitted); *see also Hemmings v. Tidyman's Inc.*, 285 F.3d 1174, 1188 (9th Cir. 2002) ("Vigorous cross-examination of a study's inadequacies allows the jury to appropriately weigh the alleged defects and reduces the possibility of prejudice."); *Cummings v. Standard Register Co.*, 265 F.3d 56, 65 (1st Cir. 2002) (holding that "whatever shortcomings existed in [the expert's] calculations went to the weight, not the admissibility, of the testimony").

Based on the above, the Court finds that Defendant has satisfied its burden of demonstrating, by a preponderance of the evidence, the reliability of Mr. Bradley's expert opinions. *See Rink v. Cheminova*, 400 F.3d 1286, 1291-92 (11th Cir. 2005) (party offering the expert testimony must demonstrate admissibility by a preponderance of the evidence).

### 3. *Helpfulness*

"[E]xpert testimony is admissible if it concerns matters that are beyond the understanding of the average lay person" and offers something "more than what lawyers for

the parties can argue in closing arguments." *Webb*, 321 F.R.D. at 425 (quoting *Frazier*, 387 F.3d at 1262-63). Furthermore, while "[a]n expert may testify as to his opinions on an ultimate issue of fact . . . he 'may not testify as to his opinion regarding ultimate legal conclusions.'" *Umana-Fowler*, 49 F. Supp. 3d at 1122 (quoting *United States v. Delatorre*, 308 Fed. Appx. 380, 383 (11th Cir. 2009)). "[M]erely telling the jury what result to reach is unhelpful and inappropriate." *Id.* (citing *Montgomery*, 898 F.2d at 1541).

Plaintiff does not appear to challenge the helpfulness of Bradley's opinions. In any event, the Court finds these opinions helpful because matters of water intrusion in buildings and how that causes damage, as here, are beyond the understanding and experience of the average lay citizen and because his visual inspection and opinions regarding the damage to the Property will inform the trier of fact regarding the potential causes of the damage to the Property. *St. Louis Condo. Ass'n, Inc.*, No. 18-21365-CIV, 2019 WL 2013007, at *5.

### V. CONCLUSION

Based on the foregoing, it is hereby

**ORDERED AND ADJUDGED** that Plaintiff's Amended *Daubert* Motion to Exclude and/or Limit the Testimony of Jeffrey Bradley [ECF No. 34] is **DENIED**.

**DONE AND ORDERED** in Chambers at Miami, Florida this 18th day of October, 2022.

_____
MELISSA DAMIAN
UNITED STATES MAGISTRATE JUDGE