UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CSAE NO.: 21-Civ-23148

**LEIGH ROTHSCHILD**,

    Plaintiff,

vs.

**GREAT NORTHERN INSURANCE COMPANY**,

    Defendant.
_____/

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

**THIS MATTER** is before the Court on Defendant Great Northern Insurance Company's Motion for Summary Judgment (the "Motion"), filed July 15, 2022. ECF No. 28. Plaintiff Leigh Rothschild ("Plaintiff") filed a response in opposition to the Motion on August 8, 2022. ECF No. 51. Thereafter, on August 15, 2022, Defendant Great Northern Insurance Company ("Defendant") filed a reply brief in support of the Motion. ECF No. 52. As such, the Motion is ripe for adjudication. Having reviewed the Motion, the briefing related thereto, the record, and the relevant legal authorities, the Court finds, for the reasons explained below, that the Motion should be granted.

### BACKGROUND

**I.  Procedural Background**

This action involves a one-count claim for breach of contract stemming from an insurance agreement. Plaintiff originally filed this action in the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida on March 29, 2021. ECF No. 1-1. Defendant removed this action to this Court, on August 31, 2021, based upon diversity jurisdiction. ECF No. 1.

1

## II.     Factual Background[1]

Plaintiff alleges that Defendant breached the terms of insurance policy number 13815601-01 (the "Policy"), which provided certain insurance coverage for contents, such as additions and alterations, to Plaintiff's Property located at 1574 NE Quayside Terrace D18, Miami, FL 33138 (the "Property").[2] The Policy was effective from December 5, 2019 to December 5, 2020. The Policy contains a deductible of $2,500. Plaintiff cannot recover payment for a claim if the amount of the claim does not exceed the Policy's applicable deductible. The Policy provided coverage for covered losses from an "occurrence" during the Policy's effective period.

The Policy's "Gradual or sudden loss" exclusion provides as follows:

> **Gradual or sudden loss**. We do not provide coverage for the presence of wear and tear, gradual deterioration, rust, bacteria, corrosion, dry or wet rot, or warping, however caused, or any loss caused by wear and tear, gradual deterioration, rust, bacteria, corrosion, dry or wet rot, or warping. We also do not cover any loss caused by inherent vice, latent defect or mechanical breakdown. But we do insure ensuing covered loss unless another exclusion applies.

ECF No. 29-2, Ex. 2 at p. 56. The Policy's "Surface water" exclusion provides as follows:

> **Surface water**. We do not cover any loss caused by: Flood, accumulation of rainwater on the ground, surface water, wave action, including tidal wave and tsunami, tides, tidal water, seiche, overflow of water from a body of water, spray or surge from any of these, even if driven by wind; water or water borne material from any of the above, including when any such waters or water borne material enters

---

[1]     The facts relevant to Defendant's Motion are undisputed unless otherwise indicated and are taken from the following statements of facts along with their accompanying exhibits: Defendant's Statement of Undisputed Material Facts (ECF No. 29), Plaintiff's Statement of Material Facts in Opposition to Defendant's Motion for Summary Judgment (ECF No. 50), and Defendant's Reply Statement of Material Facts to Plaintiff's Statement of Material Facts in Opposition of Defendant's Motion for Summary Judgment (ECF No. 53).

[2]     At his deposition, Plaintiff testified that his claim is "a claim for leakage that occurred on [the] patio of [his] property that caused damage to the garage. The garage where cars are parked, including [his] car [and] other cars." ECF No. 29-3, Ex. 3, Pl.'s Dep. at 20:11-16. Plaintiff further testified "I do not believe that the loss that occurred, the leakage that occurred was a result of Tropical Storm Eta. . . . I have no idea what it was a result of. I'm not an engineer. I'm not a lawyer. You know a water engineer. I have no idea what the cause was." *Id.* at 29:9-14.

and backs up or discharges from or overflows from any sewer or drain, located outside of or on the exterior of a fully enclosed structure, including gutters, rainwater pipes, downspouts, or underground drainage systems; [or] Run off of water or water borne material from a paved surface, driveway, walkway, patio, or other similar surface.

*Id.* at pp. 57-58. The Policy's "Faulty planning, construction or maintenance" exclusion provides as follows:

> **Faulty planning, construction or maintenance**. We do not cover any loss caused by the faulty acts, errors or omissions of you or any other person in planning, construction or maintenance. It does not matter whether the faulty acts, errors or omissions take place on or off the insured property. But we do insure ensuing covered loss unless another exclusion applies. "Planning" includes zoning, placing, surveying, designing, compacting, setting specifications, developing property and establishing building codes or construction standards. "Construction" includes materials, workmanship, and parts or equipment used for construction or repair.

*Id.* at p. 60. The Policy does not provide coverage for damage to structures. *Id.* at p. 17.

Under the "Property Conditions" section, the Policy contains a subsection titled "Insurable interest" which specifies as follows: "We will not pay for any loss to property in which you or a family member does not have an insurable interest at the time of the loss." *Id.* at p. 47.

Plaintiff does not have any personal knowledge of the cause of the alleged loss to the Property and is relying on his experts to establish causation for the alleged loss. Plaintiff's weather expert, James Bria, did not have any knowledge of causation of the alleged loss at the Property. Plaintiff's causation expert and only witness with knowledge of causation of the alleged loss is general contractor Mario Farnesi. Mr. Farnesi testified that water intrusion in the garage below Plaintiff's Property was a result of a water leak in the Property's deck above the garage. Mr. Farnesi's report notes that he found "a tear in the waterproofing membrane near the floor drain, which was likely caused by a crack in the concrete deck. In addition[], several sections of spalling concrete deck were noted on the ceiling deck in the parking garage." Mr. Farnesi's report concluded that "[b]ased on our findings, our professional opinion is that the leak in the parking

3

garage that short-circuited the electrical components was not caused by improperly installed waterproofing but was caused by a tear in the waterproofing membrane system that occurred as a result of concrete spalling of the concrete deck below." Mr. Farnesi further testified that concrete spalling is the process "when you have the rebar within concrete, when it gets exposed to water and it begins to rust, that rust, what it does is it expands the rebar which, in turn, begins to push out and crack the concrete that is around it." Mr. Farnesi also testified that "with concrete spalling . . . [you] really don't notice there is a damage until the damage is basically well beyond, you know, a point where you can really correct it . . . that would be the first sign of a concrete spalling. The next thing that is going to happen after this, eventually, if this is not treated, that patch that has a crack around it, that will eventually pop off. At that point, there is really no correcting it. You have to go in and actually do a proper repair, chipping out, and so forth. It's hard to determine that you have spalling until it appears[.]"

Defendant's causation expert, Jeffrey Bradley, opined that "[t]he water intrusion would not occur with a properly installed waterproofing layer and wall flashing. The cause of the plaza deck water instruction is installation deficiencies in the waterproofing layer and/or wall flashing." Mr. Bradley's Report concluded that "[a]lthough the water intrusion could not be replicated during the study, heavy precipitation [on] November 8, 2020 [during] Tropical Storm Eta provided sufficient precipitation for the water infiltration." Meanwhile, Plaintiff's weather expert, James Bria, did not have any knowledge regarding damages resulting from the alleged loss at the Property.

The parking garage below Plaintiff's Property is owned by Plaintiff's condominium association, not Plaintiff. Plaintiff testified that the parking space below the patio deck of the Property is not assigned to his condominium unit. Plaintiff does not have an insurable interest in the ensuing damage to the parking garage below Plaintiff's Property. The Declaration of

Condominium for Plaintiff's building notes that the garage below the condominium units, including Plaintiff's Property, are classified as "Other Improvements", which are Condominium Property. Under Article III, "Description of Condominium, the Declaration notes as follows: "C. Description of Other Improvements. In addition to the previously described residential buildings and previously defined Common Elements, the Condominium Property includes… equipment rooms and storage area and parking garage[.]" Under "Article VII. Condominium Association", section "J. Maintenance, Repairs and Compliance," part "2. By the Association," "The [condominium] Association shall be responsible for the maintenance, repair, and replacement of all of the Common Elements." The drawing of the Property contained in the Declaration of Condominium notes that the "Elevation Profile" incudes the four levels contained within the Property and the exterior patio deck (called an "Entry court"), but not the parking garage below the Property.

Defendant's policy does not contain any anti-concurrent cause provisions. Defendant's Corporate Representative testified that Plaintiff's claim was not denied due to Hurricane or Tropical Storm Eta. Defendant's Corporate Representative also testified that the claim was only denied for the reasons stated in the February 11, 2021 denial letter. Additionally, Defendant's Corporate Representative testified that rain is not excluded under the applicable policy.

## LEGAL STANDARD

Summary judgment "shall be granted if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642 (11th Cir. 1997) (quoting Fed. R. Civ. P. 56(c)) (internal quotations omitted); *Damon v. Fleming Supermarkets of Florida, Inc.*, 196 F.3d 1354, 1358 (11th Cir. 1999). Thus, the entry of summary judgment is appropriate "against a party who

fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

"The moving party bears the initial burden to show the district court, by reference to materials on file, that there are no genuine issues of material fact that should be decided at trial." *Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 608 (11th Cir. 1991). "Only when that burden has been met does the burden shift to the non-moving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment." *Id.* Rule 56, moreover, "requires the nonmoving party to go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324. Thus, the nonmoving party "may not rest upon the mere allegations or denials of [her] pleadings, but must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (internal quotation marks omitted) (alteration added).

"A factual dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Damon*, 196 F.3d at 1358. "A mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party." *Abbes v. Embraer Servs., Inc.*, 195 F. App'x 898, 899-900 (11th Cir. 2006) (quoting *Walker v. Darby*, 911 F.2d 1573, 1577 (11th Cir. 1990)). When deciding whether summary judgment is appropriate, "the evidence, and all inferences drawn from the facts, must be viewed in the light most favorable to the non-moving party." *Bush v. Houston County Commission*, 414 F. App'x 264, 266 (11th Cir. 2011).

6

## ANALYSIS

Defendant argues that it is entitled to summary judgment because: 1) Plaintiff cannot establish that a covered loss caused damage to the Property; 2) Plaintiff cannot establish that a covered loss occurred during the Policy period; 3) Plaintiff cannot recover any damages for ensuing loss because Plaintiff does not have an insurable interest in items damaged as a result of ensuing loss; 4) Plaintiff cannot prove damages because he has not provided any evidence of the amount of damages incurred as a result of the loss; and 5) Defendant is entitled to a finding that Plaintiff's damages do not exceed the Policy's $2,500 deductible. Because the Court finds that Plaintiff has failed to establish that a covered loss caused damage to the Property, the Court need not and will not address Defendant's other contentions.

"'Under Florida law, insurance contracts are construed according to their plain meaning.'" *Porben v. Atain Specialty Ins. Co.*, 546 F. Supp. 3d 1325, 1329-30 (S.D. Fla. 2021) (quoting *Taurus Holdings, Inc. v. U.S. Fid. & Guar. Co.*, 913 So. 2d 528, 532 (Fla. 2005)). "Ambiguities are construed against the insurer and in favor of coverage." *Id.* "Although ambiguous provisions are construed in favor of coverage, to allow for such a construction the provision must actually be ambiguous." *Id.* "Because they tend to limit or avoid liability, exclusionary clauses are construed more strictly than coverage clauses." *Id.* (quoting *Category 5 Mgmt. Grp., LLC v. Companion Prop. & Cas. Ins. Co.*, 76 So. 3d 20, 23 (Fla. 1st DCA 2011)). However, if "a policy provision is clear and unambiguous, it should be enforced according to its terms whether it is a basic policy provision or an exclusionary provision." *Id.* Thus, "courts may not rewrite contracts, add meaning that is not present, or otherwise reach results contrary to the intentions of the parties." *Interline Brands, Inc. v. Chartis Specialty Ins. Co.*, 749 F.3d 962, 965 (11th Cir. 2014) (quotation marks and citation omitted)).

I.  **PLAINTIFF FAILED TO ESTABLISH THAT A COVERED LOSS CAUSED DAMAGE TO THE PROPERTY**

As previously mentioned, Defendant first argues that it is entitled to summary judgment because Plaintiff cannot establish that a covered loss caused damage to the Property. More specifically, Defendant argues "Plaintiff's only witness with knowledge of the cause of Plaintiff's loss is certified general contractor Mario Farnesi. However, neither Mr. Farnesi's written report nor his deposition testimony identify any cause of loss to Plaintiff's Property that is covered under the Policy." ECF No. 28, Mot. Summ. J. at p. 6. Defendant then goes on to cite to and quote from Mario Farnesi's Expert Report and deposition testimony. The Court will address each in turn.

A.  **FARNESI EXPERT REPORT**

As previously discussed, in pertinent part, the Farnesi Expert Report determined that "[t]he subject residence has experienced damage to the patio tile floor system and electrical components in the parking garage." ECF No. 29-10, Ex. 10, Farnesi Expert Report at p. 19. That Report goes on to state that there was "a tear in the waterproofing membrane near the floor drain, which was likely caused by a crack in the concrete deck. In addition, several sections of spalling concrete deck were noted on the ceiling deck in the parking garage." *Id.* Importantly, the Report concluded "[b]ased on our findings, our professional opinion is that the leak in the parking garage that short-circuited the electrical components was not caused by improperly installed waterproofing but was caused by a tear in the waterproofing membrane system that occurred as a result of concrete spalling of deck below." *Id.* at p. 21.

B.  **FARNESI DEPOSITION TESTIMONY**

With respect to the waterproofing membrane, in his deposition, Mr. Farnesi testified that he did not know when the tear in the membrane occurred and that he was not able to estimate when the tear occurred. ECF No. 29-9, Farnesi Dep. at 26:16-21. Mr. Farnesi further testified that it was

his "opinion that there was a crack in the structure below and because of the crack, the crack tore the membrane . . . [w]ith the concrete separating toward the membrane." *Id.* at 27:9-14; 27:15-18. When asked to explain what concrete spalling is, Mr. Farnesi testified:

> So concrete spalling -- there are many different types of it, but I'll give it to you in a simple nutshell. It's basically when you have the rebar within concrete, when it gets exposed to water and it begins to rust, that rust, what it does is it expands the rebar which, in turn, begins to push out and crack the concrete that is around it.

*Id.* at 28:10-16. Mr. Farnesi further testified that he was not able to opine as to when the concrete spalling occurred. *Id.* at 28:25-29:2. Nor could he testify as to when the water stains in the parking garage in the area below Plaintiff's deck began to form. *Id.* 29:6-23. And when asked if he was able to determine whether there was any damage to the property that began on November 20, 2020, Mr. Farnesi stated: "No. I can't pinpoint dates. To me, in my opinion, if it was notified on that day, it happened prior to that day." *Id.* at 40:17-22. Moreover, Mr. Farnesi was not able to give an opinion as to when the concrete spalling below Plaintiff's patio began to form. *Id.* at 35:10-13. However, Mr. Farnesi did testify that "it's possible [that the damage he observed in the parking garage below Plaintiff's deck/patio] occurred within the last four years." *Id.* at 33:12-13. And Mr. Farnesi admitted that concrete spalling occurs over a period of time before it becomes visible. *Id.* at 34:2-6.

Mr. Farnesi's Report and Deposition testimony establish that the purported damage to Plaintiff's deck/patio occurred as a result of concrete spalling which, according to Mr. Farnesi, occurred over a period of time. This triggers the "Gradual or sudden loss" exclusion under the Policy which, as previously mentioned, provides:

> **Gradual or sudden loss**. We do not provide coverage for the presence of wear and tear, *gradual deterioration*, *rust*, bacteria, corrosion, dry or wet rot, or warping, however caused, or any loss caused by wear and tear, *gradual deterioration*, *rust*, bacteria, corrosion, dry or wet rot, or warping. We also do not cover any loss caused by inherent vice, latent defect or mechanical breakdown. But we do insure ensuing covered loss unless another exclusion applies.

9

ECF No. 29-2, Ex. 2 at p. 56 (emphasis added).

### C. Plaintiff's Opposition Fails To Establish A Material Dispute of Fact

In his opposition, Plaintiff argues:

> Plaintiff has direct knowledge of the condition of his property before and after the cause of loss. Moreover, he was informed on the date of the loss from his Condominium Association's Staff that water was leaking from his patio into the garage below his property. Notwithstanding this, Plaintiff's expert Mario Farnesi testified as to the scope and causation of the loss. Moreover, the doctrine of res ipsa loquitor applies here as a water leak protruding from Plaintiff's deck speaks for itself.

ECF No. 51, Opp. to Mot. Summ. J. at p. 5. Plaintiff then goes on to argue that the Mend the Hold Doctrine precludes Defendant from asserting exclusions outside of those specifically mentioned in the denial of claim letter. And, finally, Plaintiff argues that even if the Mend the Hold Doctrine does not apply, the Exclusions within the Policy do not apply.

The problem with Plaintiff's Exclusion arguments and much of his opposition is that he does not direct this Court to any record evidence to support his positions. Thus, Plaintiff's Opposition is nothing more than argument of counsel. This, however, is insufficient at the summary judgment stage. To be clear, Rule 56(c)(1) of the Federal Rules of Civil Procedure establishes that a party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). Plaintiff's argument of counsel without any evidentiary support fails to comply with Rule 56(c)(1). This is fatal. "The Court does not have 'an obligation to parse a summary judgment record to search out facts or evidence not brought to the court's attention.'"

10

*Doe v. City of Miami Gardens*, 389 F. Supp. 3d 1118, 1123 (S.D. Fla. 2019) (quoting *Atlanta Gas Light Co. v. UGI Utilities, Inc.*, 463 F.3d 1201, 1208 n.11 (11th Cir. 2006)). *See also Chavez v. Sec'y Fla. Dep't of Corr.*, 647 F.3d 1057, 1061 (11th Cir. 2011) (explaining that judges "are not like pigs, hunting for truffles buried in briefs[.]") (quoting *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991)). Plaintiff had an opportunity to provide this Court with citations to record evidence to support his argument; however, Plaintiff chose not to do so. The Court will not ferret out supporting facts and evidence from the record for Plaintiff.

Furthermore, the Court finds that the Mend the Hold Doctrine is not applicable. "The 'Mend the Hold' Doctrine is based on the principles of waiver and estoppel. The basic tenet of the doctrine is that a party to a contract cannot change its defenses to performance of the contract in the middle of the litigation." *Baquero v. Lancet Indem. Risk Retention Grp., Inc.*, No. 12-24105-CIV, 2013 WL 5237740, at *6 (S.D. Fla. Sept. 17, 2013) (internal citations omitted). "Further, courts 'have found that 'Mend the Hold' will operate to bar a new defense only where the insurer had sufficient information at the time of the initial denial of coverage to have waived the additional defenses presented.'" *Belle Terre Condo Ass'n v. Westchester Surplus Lines Ins. Co.*, 548 F. Supp. 3d 1301, 1307 (S.D. Fla. 2021) (quoting *Baquero*, 2013 WL 5237740, at *6 (internal quotation and citation omitted in original)).

Here, Defendant did not change its defenses in the middle of litigation. In fact, Defendant's Second Affirmative Defense asserts that the Gradual or Sudden Loss Exclusion bars coverage under the Policy for Plaintiff's claims. ECF No. 1-1, Answer and Aff. Defenses at p. 4. Additionally, the denial of coverage letter that Defendant sent to Plaintiff expressly asserts that Defendant denied coverage for Plaintiff's claim for damage to his patio tile and ensuing water damages due to the Policy's Gradual or Sudden Loss Exclusion (in addition to the faulty planning,

construction, or maintenance exclusion). ECF No. 31-6 at p. 2. Furthermore, Plaintiff has not provided any evidence demonstrating that, at the time Defendant initially declined to make payments under the Policy, Defendant had sufficient information to have waived its Second Affirmative Defense. As a consequence, the Court finds that the Mend the Hold Doctrine is not applicable here.

## CONCLUSION

As explained above, Plaintiff's own expert, Mario Farnesi, opined that the Loss was caused by a tear in the waterproofing membrane system that occurred as a result of concrete spalling of the concrete deck below. And Mr. Farnesi further opined that the concrete spalling involved rust and occurred over a period of time. As such, Plaintiff's own expert established that the Gradual or Sudden Loss Exclusion bars coverage under the Policy. Moreover, in the face of this evidence, Plaintiff failed to direct the Court to any evidence of his own to contradict Mr. Farnesi's findings. Additionally, as explained above, the Mend the Hold Doctrine is not applicable. Accordingly, for the reasons discussed above, it is **ORDERED and ADJUDGED** as follows:

1. Defendant Great Northern Insurance Company's Motion for Summary Judgment [ECF No. 28] is **GRANTED**.
2. By separate order, the Court will enter a final judgment in favor of Defendant Great Northern Insurance Company.
3. All pending motions are **DENIED AS MOOT**.

**DONE and ORDERED** in Chambers at Miami, Florida, on this 14th day of November 2022.

_____
DARRIN P. GAYLES
UNITED STATES DISTRICT COURT JUDGE
For Marcia G. Cooke, U.S. District Judge