UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

CASE NO.: 1:21-cv-23148-CMA

LEIGH ROTHSCHILD,

        Plaintiff,

v.

GREAT NORTHERN INSURANCE COMPANY,

        Defendant.

_____/

### DEFENDANT GREAT NORTHERN INSURANCE COMPANY'S REPLY IN SUPPORT OF MOTION FOR ENTRY OF JUDGMENT ON ATTORNEY'S FEES AND COSTS AND IN OPPOSITION TO PLAINTIFF'S CROSS MOTION TO ENFORCE SETTLEMENT

Defendant, Great Northern Insurance Company ("Defendant"), files this Reply in support of its Motion for Entry of Judgment on Attorney's Fees and Costs [D.E. 127], and in opposition to Plaintiff's Cross-Motion to Enforce Settlement [D.E. 128] and states as follows:

### INTRODUCTION

On October 6, 2025, Defendant filed its Motion for entry of judgment on attorney's fees and costs ("Defendant's Motion"). *See* [D.E. 127]. Defendant's Motion asked this Court to enter judgment in its favor based on its already established entitlement to attorney's fees and costs stemming from its successful Motion for Summary Judgment (*See* [D.E. 81]), Motion for Entitlement to Attorney's Fees and Non-Taxable Costs (*See* [D.E. 96]), and the negotiated resolution of its Motion to Determine the Amount of attorney's fees and non-taxable costs (*See* [D.E. 109]; [D.E. 127-1]).

Plaintiff filed its purported response in opposition to Defendant's Motion and cross-motion to enforce settlement on October 13, 2025 ("Plaintiff's Motion"). *See* [D.E. 128]. Rather than respond to the merits of Defendant's Motion, Plaintiff's Motion argues that Defendant's Motion to Determine the Amount of attorney's fees and non-taxable costs is moot based on: (1) a settlement agreement that Plaintiff has breached and abandoned, and (2) an incomplete citation to an order from this Court that, if read in full, clearly states that Defendant is permitted to "submit a proposed order that reflects the amount of fees agreed to." *See* [D.E. 126]. Aside from the lone reference to Defendant's Motion to Determine the Amount of attorney's fees and non-taxable costs in Paragraph 3 of Plaintiff's purported reply, Plaintiff's Motion never again addresses the merits of Defendant's Motion. Rather, Plaintiff filed a cross-motion to enforce a settlement agreement that was never reached in full and which Plaintiff himself breached. But, after initially reaching the settlement agreement, Plaintiff has attempted to avoid finalizing the settlement agreement by insisting on new terms in an overbroad release to prevent the final consummation of the settlement and the conclusion of this matter. Nonetheless, Plaintiff now seeks to enforce the incomplete settlement agreement that Plaintiff himself breached.

This Court should reject the arguments in Plaintiff's response and cross-motion and grant Defendant's Motion.

## ARGUMENT AND MEMORANDUM OF LAW

### I. Defendant's Motion To Determine the Amount Entitlement to Attorney's Fees Was Not Abandoned.

Plaintiff's Motion only includes two passing references in opposition to Defendant's Motion. First, Plaintiff states that "This Court then denied as moot, Defendant's Motion for Attorneys' Fees given the settlement reached. (D.E. 126)." *See* [D.E. 128 at ¶3]. This citation

1

ignores the full text of the Court's order, which states as follows: "PAPERLESS ORDER denying as moot [109] Motion for Attorney Fees, given the settlement reached before Magistrate Judge Lisette Reid. <u>Defendant may nevertheless submit a proposed order that reflects the amount of fees agreed to, if preferred</u>." *See* [D.E. 126]. (emphasis added). By way of Defendant's Motion, Defendant has exercised its right to submit a proposed order reflecting the amount of fees that Plaintiff agreed to, as well as an accompanying motion.

Second, Plaintiff states that he came to the conclusion that Defendant "abandoned" its claim for attorneys' fees and costs. *See* [D.E. 128 at ¶19]. It is not clear why Plaintiff made this assumption. Nonetheless, at the time settlement "negotiations" concluded with an impasse in February 2025, as memorialized in the communications cited in Plaintiff's Motion (*see generally* [D.E. 128-1]), it had become clear to Defendant that Plaintiff had already breached the settlement agreement reached between the parties and had no intention of memorializing a settlement agreement in accordance with the agreement reached during the January 9, 2025 settlement conference between the parties. Instead, Plaintiff spent the next two months following the settlement conference attempting to re-write the settlement agreement to include any and all other claims between the parties, including three claims unrelated to the claim in litigation of which both Plaintiff and Defendant were aware, but that neither party ever discussed during the settlement negotiations. Given Plaintiff's conduct and breach, it was clear to Defendant that further communications with Plaintiff and his counsel would not lead to a fruitful resolution of this claim and would only serve as an unnecessary waste of resources. As such, Defendant declined Plaintiff's invitation to re-negotiate the terms of the prior settlement between the parties. Instead, Defendant elected to file Defendant's Motion, including the submission of a proposed order that was explicitly allowed by this court's Order. *See* [D.E. 126].

## II. The Parties Never Reached an Enforceable Settlement.

Under Florida law, "the party seeking a judgment on the basis of a settlement has the burden to establish a meeting of the minds or mutual reciprocal assent to a certain and definite proposition." *Long Term Management, Inc. v. University Nursing Care Center, Inc.*, 704 So.2d 669 (Fla. 1st DCA 1997). "To be enforced, the agreement must be sufficiently specific and mutually agreeable on every essential element."[1] *Don L. Tullis and Assoc., Inc. v. Benge*, 473 So.2d 1384 (Fla. 1st DCA 1985). "An enforceable contract requires mutual assent as to sufficiently definite essential terms. A showing of mutual assent as to each sufficiently definite essential term is established by objective, external evidence that the parties said the same thing regarding each essential term. *Roland Corporation v. InMusic Brands, Inc.*, 2020 WL 10818392 (S.D. Fla. July 3, 2020) (Altonaga, J.) (citing *Kolodziej v. Mason*, 774 F.3d 736, 744 (11th Cir. 2014); *Vision Palm Springs, LLLP v. Michael Anthony Co.,* 272 So. 3d 441, 444 (Fla. 3rd DCA 2019))

"Although settlement agreements are favored by the law, there must be a meeting of the minds as to the essential settlement terms in order for settlement agreements to be enforceable.… the making of a contract depends not on the agreement of two minds in one intention, but on the agreement of two sets of external signs-not on the parties having meant the same thing but on their having said the same thing." *GE Medical Systems, S.C.S. v. Symx Healthcare Corp.*, 2019 WL 3409489 (S.D. Fla. May 17, 2019) (Altonaga, J.) (citing *Schlosser v. Perez*, 832 So. 2d 179, 182 (Fla. 2d DCA 2002); *Spiegel v. H. Allen Homes, Inc.,* 834 So. 2d 295, 297 (Fla. 4th DCA 2002)).

---

[1] Plaintiff's Motion cites to *Blackhawk* and *Gendzier* in support of his argument that "Uncertainty as to nonessential terms or small items will not preclude the enforcement of a settlement agreement." However, neither *Blackhawk* nor *Gendzier* discuss the enforcement of settlement agreements. Rather, *Blackhawk* analyzed the enforceability of a bank contract and considered the specific question of whether a specific contract term was enforceable, while *Gendzier* analyzed a contract regarding the purchase of merchandise. See *Blackhawk Heating & Plumbing Co., Inc. v. Data Lease Fin. Corp.,* 302 So.2d 404 (Fla. 1974); *Gendzier v. Bielecki*, 97 So.2d 604 (Fla. 1957)).

3

"The party seeking to enforce a settlement agreement bears the burden of showing the opposing party assented to the terms of the agreement. The moving party must establish a meeting of the minds or mutual or reciprocal assent to a certain and definite proposition." *Rolex Watch U.S.A., Inc. v. Bonney*, 546 F.Supp.2d 1304, 1307 (M.D. Fla. 2008) (citations omitted).

Here, the record evidence shows that there was no meeting of the minds regarding the terms of the settlement. Following the settlement contract, the parties' attorneys exchanged emails regarding the terms of the negotiated settlement (the "Settlement Conference Email") (*See* [D.E. 127-1 at p. 2]).

As is noted in the exhibits to Plaintiff's Motion, on January 9, 2025, both parties agreed to the following language in the Settlement Conference Email: "(4) The settlement agreement will be a full release to both parties." *See* [D.E. 128-1 at p. 2]. Following the settlement, the parties exchanged drafts of the release that was to be executed by Plaintiff to effectuate the release. During the process of exchanging draft releases, it became clear that Plaintiff and Defendant had not reached a meeting of the minds regarding the scope of the release. Specifically, Plaintiff's draft release included the following language:

> General Release. Except for the duties and obligations set forth in this Agreement, each of the parties to this agreement, for itself and its respective past or present predecessor, successor, parent, subsidiary or affiliated entities (collectively "Releasors") do hereby remise, release, acquit, satisfy, and forever discharge the other party, and its respective past or present predecessor, successor, parent, subsidiary or affiliated entities employees, directors, officers, , and the irrespective heirs and representatives (the "Releasees"), of and from any and all manner of action and actions, cause and causes of action, suits, debts, dues, sums of money, accounts, reckonings, bonds, bills, specialties, covenants, contracts, controversies, agreements, promises, invoices, variances, trespasses, damages, judgments, executions, claims and demands whatsoever, in law or in equity, which Releasors ever had, now have, or hereafter can, shall or may have, against Releasees, for, upon or by reason of any matter, cause or thing whatsoever, whether direct or vicarious, accrued or unaccrued, known or unknown, contingent or absolute, asserted or unasserted, suspected or unsuspected, disclosed or undisclosed, hidden or concealed, matured or unmatured, from the beginning of the world to the date of

>  this Agreement, including but not limited to, any and all claims made or that could have been made in the Lawsuit, which shall include any claims or potential claims for attorneys' fees, costs, and punitive damages.

*See* [D.E. 128-1] at p. 7-8.

After receiving Plaintiff's draft of the release, Defendant noted his opposition to the inclusion of several terms that the parties never discussed during the settlement negotiations by striking the proposed language above from the release. Specifically, Defendant noted that during the process of negotiating the settlement, the parties had only discussed settling the specific claim at issue in this litigation (*i.e.*, the November 2020 water leak claim at Plaintiff's property). The parties never discussed settling any of the other claims that Plaintiff had reported to Defendant (including a 2013 shower leak damage claim, a 2018 termite damage claim, a 2020 water heater leak damage claim). The parties have never discussed settling "all claims from the beginning of the world to the date of this agreement," and Defendant certainly never agreed to settle and claims that Plaintiff may have "hidden or concealed." Given that the parties had never discussed settling anything other than the specific claim in litigation, Defendant continued to refuse to release language that purported to settle anything other than the specific claim in litigation and Defendant's claim for attorney's fees and costs arising from that specific claim in litigation.

At the time of the prior settlement, Defendant's understanding was that the "settlement agreement will be a full release to both parties" *as to the claim in litigation only*, as the claim in litigation was the only claim that the parties had discussed settling. Defendant's understanding that the settlement only pertained to the claim presented in the present litigation is further confirmed by the language of part 1 of the Settlement Conference Email, which states that the settlement payment issued by Plaintiff will serve as "full and final payment for any monies due <u>as it relates to this matter 1:21-cv-23148-CMA Rothschild v. Great Northern Insurance Company</u>." *See* [D.E.

128-1 at p. 2]. (emphasis added). Conversely, Plaintiff evidently believed that the "settlement agreement will be a full release to both parties" *as to any claims that could have existed between the parties, including Plaintiff's three prior claims*. However, Plaintiff never communicated this expectation to Defendant. Despite failing to communicate his intention to settle the three prior claims (or anything other than the specific claim in litigation) to Defendant until after the settlement, Plaintiff now seeks to enforce the settlement pursuant to the terms of the language that Plaintiff attempted to add to the settlement agreement after the settlement conference, but which the parties never discussed.

Based on Plaintiff's continued insistence on including the above-referenced "General Release" language (including a release of any claims that Plaintiff may have "hidden or concealed") in the release, it is clear that the parties never had a meeting of the minds regarding the meaning of a "a full release to both parties," as memorialized in Settlement Conference Email exchanged by the Parties' attorneys following the settlement. Plaintiff has not met his burden of establishing that there was a "meeting of the minds" regarding the meaning of what qualifies as a "full release" between the parties. Since there was no meeting of the minds between the parties regarding this ambiguous "full release," language, there is not an enforceable settlement agreement between the parties.

It is worth noting that Defendant's Motion seeks entry of judgment in the amount of $128,149.95[2] based on the negotiations that occurred between the parties on January 6, 2025, prior to commencement of the settlement conference that concluded on January 9, 2025. *See* [D.E. 127-1] at p. 9; 30:1-31:14. As is noted in Defendant's Motion, Plaintiff agreed to resolve Defendant's

---

[2] Defendant's Motion seeks entry of judgment in the amount of $128,230.00, rather than $128,149.95, due to a minor scrivener's error contained in Defendant Motion. For avoidance of doubt, Defendant confirms that it seeks entry of judgment in the amount of **$128,149.95,** not $128,230.00.

6

Motion to Determine the Amount of Attorney's Fees and Non-Taxable Costs [D.E. 109] ("Defendant's Motion to Determine Amount") for $128,149.95 ($122,194.95 for attorney's fees and $5,955.00 for costs) before the parties engaged in the settlement discussions that ultimately resulted in the Settlement Conference Email. Plaintiff's agreement to resolve Defendant's Motion to Determine Amount was separate from the settlement conference and preceded the Settlement Conference Email. Accordingly, Defendant is entitled to an order on Defendant's Motion to Determine Amount even if the settlement agreement between the parties is not enforceable (as is argued in the present reply). Plaintiff agreed to resolve Defendant's Motion to Determine Amount separate from, and prior to, any settlement reached at the Settlement Conference. Thereafter, the parties conducted the Settlement conference and reached an agreement as memorialized in the Settlement Conference Email. However, as is explained herein, Plaintiff has failed to comply with its requirements under the Settlement Conference Email.

### III. If the Parties Did Reach an Enforceable Settlement, Plaintiff Breached the Settlement and Cannot Now Enforce the Settlement that it Breached.

Even if the parties did reach an enforceable settlement agreement as memorialized in the Settlement Conference Email, Plaintiff cannot enforce the settlement agreement because he has breached the terms of the settlement agreement.

Under Florida Law, "the general rule is that a material breach of [a contract] allows the non-breaching party to treat the breach as a discharge of his contractual liability." *Focus Management Group USA, Inc. v. King*, 171 F.Supp.3d 1291, 1299 (M.D. Fla. 2016). (citing *Colucci v. Kar Kare Automotive Group, Inc.,* 918 So.2d 431, 437 (Fla. 4th DCA 2006)). "It is a fundamental principle of Florida contract law that a material breach by one party excuses the

performance by the other."). *Hamilton v. Suntrust Mortg. Inc.*, 6 F. Supp. 3d 1300, 1309 (S.D. Fla. 2014).

Following the settlement conference, the parties agreed certain settlement terms, as memorialized in the Settlement Conference Email. Notably, the settlement terms included the following:

> (1) Leigh Rothschild will agree to pay $25,000 dollars in two payments as full and final payment for any monies due as it relates to this matter 1:21-cv-23148-CMA Rothschild v. Great Northern Insurance Company. The first $20,000.00 payment will be made within 15 days of execution, and the second $5,000.00 dollar payment will be made within 120 days of execution.
> …
> (3) Should Leigh Rothschild not make either payment on the payment due date, he agrees to waive his garnishment rights protections under Florida Statute, and Great Northern will be able to immediately enter the judgment for the full amount of $128,079.95 less any payments made;
> …
> (5) Prior to execution of the confidential settlement agreement, Leigh Rothschild will also sign the net worth statement already provided to Great Northern as part of this settlement to verify the accuracy of the net worth statement and shall form part with the confidential settlement agreement; the net worth statement will be confidential in all aspects as the overall settlement agreement and shall not be filed with the court or disclosed to anybody, subject to the above exceptions;

*See* [D.E. 128-1] at p. 2.

Plaintiff has committed several breaches the above-referenced settlement terms. First, Plaintiff has failed to execute the settlement agreement. Consequently, Plaintiff appears to have sought to delay his obligations to issue the payments required by part 1 outlined in the Settlement Conference Email by refusing to sign any release. Nonetheless, to date, Plaintiff has failed to issue any payments due under the settlement agreement. Second, Plaintiff has failed to comply with part 3 outlined in the Settlement Conference Email, as is evidenced by Plaintiff's actions in filing Plaintiff's Motion. By way of Defendant's Motion, Defendant has sought to enter judgment as allowed under part 3 of the settlement agreement. Contrary to Plaintiff's prior agreement to allow

Defendant to enter judgment against it in the event of a breach, Plaintiff has opposed Defendant's Motion. Third, Plaintiff has failed to sign the net worth statement ("Financial Statement") described in part 5 outlined in the Settlement Conference Email. Defendant requested that Plaintiff provide a copy of the signed Financial Statement by separate emails darted January 13, January 21, February 13, and February 26, 2025. *See* [D.E. 128-1] at p. 4, 5, 6-7, 9-10.

On February 27, 2025, Plaintiff finally addressed the signed Financial Statement, stating that "We have every intention of finalizing this release and providing the financial statement. <u>But we have not agreed to the terms of the agreement</u>. Once the terms have been agreed to, we will supply the financial statement." *See* [D.E. 128-1] at p. 10 (emphasis added).

Plaintiff's after-the-fact "agreement" to provide the signed Financial Statement <u>only after</u> agreeing to the terms of the release shows Plaintiff's second attempt to re-write the language of the Settlement Conference Email — the same Settlement Conference Email that Plaintiff now seeks to enforce. To date, Plaintiff still has not provided the signed Financial Statement to Defendant. By failing to provide the signed Financial Statement, Plaintiff has breached the terms of any settlement agreement between the parties.

Because Plaintiff breached the terms of the settlement agreement, as memorialized in the Settlement Conference Email, Plaintiff cannot seek to enforce the settlement. As such, Plaintiff's Motion must be denied.

## **CONCLUSION**

WHEREFORE, Defendant, Great Northern Insurance Company, respectfully requests this Court grant its Motion for Entry of Judgment on Attorney's Fees and Costs [D.E. 127], deny Plaintiff's Cross-Motion to Enforce Settlement [D.E. 128], enter the Final Judgment in the amount

of $128,149.95 against Plaintiff, and for such other and further relief as the Court deems just and proper.

**COZEN O'CONNOR**

By: /s/ *John David Dickenson*
John David Dickenson, Esquire
Florida Bar No. 575801
jdickenson@cozen.com
1801 N. Military Trail, Ste. 200
Boca Raton, FL  33431
Telephone:  (561) 515-5250

Evan M. Holober, Esquire
Florida Bar No. 1012320
eholober@cozen.com
2001 M Street NW, Suite 500
Washington, DC  20036
Telephone:  (202) 280-6446

*Counsel for Defendant, Great Northern Insurance Company*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 27, 2025, I electronically filed the foregoing document with the Clerk of the Court using CM/ECF. I also certify that the foregoing document is being served this day on all counsel of record identified on the attached Service List via transmission of Notices of Electronic Filing generated by CM/ECF.

                                                */s/ John David Dickenson*
                                                John David Dickenson, Esquire

**SERVICE LIST**
*Counsel for Plaintiff*
Josef Timlichman, Esquire
**JOSEF TIMLICHMAN LAW, PLLC**
18851 NE 29 Ave., Ste. 700
Aventura, FL  33180
Telephone:  (305) 748-3789
Email:  sperez@lawnowfl.com
         josef@lawnowfl.com
         info@lawnowfl.com
         amerrill@lawnowfl.com