UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 21-cv-23148-CMA

LEIGH ROTHSCHILD

Plaintiff,

v.

GREAT NORTHERN INSURANCE COMPANY,

Defendant.
_________________________________/

**ORDER ON CROSS-MOTIONS FOR ENTRY OF JUDGMENT AND ENFORCEMENT OF SETTLEMENT AGREEMENT**

**THIS CAUSE** came before the Court on Defendant Great Northern Insurance Company's ("Defendant") Motion for Entry of Judgment on Attorney's Fees and Costs [ECF No. 127] and Plaintiff Leigh Rothschild's ("Plaintiff") Response in Opposition and Cross-Motion to Enforce Settlement [ECF No. 128]. The motions were referred to the undersigned by Chief Judge Cecilia M. Altonaga. [ECF No. 129]. The undersigned held a hearing on December 5, 2025. [ECF No. 139]. After hearing argument from counsel, reviewing the record, and being otherwise apprised, it is hereby **ORDERED** that Defendant's Motion for Entry of Judgment [ECF No. 127] be **DENIED** and Plaintiff's Cross-Motion to Enforce Settlement Agreement [ECF No. 128] be **GRANTED**.

**RELEVANT BACKGROUND**

This breach of contract matter arises from a property insurance claim filed by Plaintiff, alleging damage to his condominium unit from Tropical Storm Eta on November 8, 2020. [ECF No. 28 at 2]. Defendant contested coverage under the relevant insurance policy. [*Id.*]. The Court granted summary judgment in favor of Defendant, and against Plaintiff. *See* [ECF Nos. 81, 82].

The Court's final judgment in favor of Defendant was affirmed by the Eleventh Circuit on July 9, 2024. [ECF No. 95].

As Defendant was determined to be entitled to attorney's fees and costs [ECF No. 105], Chief Judge Altonaga on January 6, 2025, held a hearing to determine the amount of recoverable fees and costs, *see* [ECF No. 118]. During the hearing, the parties agreed that Defendant was entitled to $122,275.00 in attorney's fees and $5,955.00 in nontaxable costs. [ECF No. 127 ¶ 8]. Notwithstanding such resolution, Plaintiff requested that the order not be entered so the parties could attend a settlement conference on the issue before the undersigned. *See* [*id.* ¶ 9]. The undersigned conducted a settlement conference on January 9, 2025, during which the parties reached an agreement regarding fees and costs. [*id.* ¶ 10]; *see also* [ECF No. 125].

Importantly, at the conclusion of the hearing, and while still on the record, Plaintiff's counsel confirmed that he sent an email to Defendant's counsel establishing the terms of the settlement. [ECF No. 128 ¶ 4]. Audio recording from the January 9, 2025, hearing shows that Plaintiff confirmed on the record that he emailed Defendant the agreed upon settlement terms. Plaintiff also provides the email exchange as an exhibit to his Response and Cross-Motion. *See* [ECF No. 128-1].

The email exchange shows that Plaintiff's counsel emailed Defendant on January 9, 2025, at 6:54 p.m., at the end of the hearing, the terms of the settlement agreement. [ECF No. 128-1 at 1]. Namely, Plaintiff's counsel wrote, "[t]his is to confirm our confidential settlement of today's settlement conference; the following are the terms we agreed to[.]" [*Id.*]. At 8:10 p.m. the same evening, Defendant's counsel responded with edits and stated, "Josef, see below with added language underlined and removed language with strikethroughs, which conforms with my client's understanding of the settlement and agreement. I will get confirmation tomorrow regarding wiring

instructions." [*Id.* at 2]. The next day at 1:59 p.m. Plaintiff's counsel replied, "[t]he changes / clarifications made by you are fine. Let me know when you're able to confirm the payment situation and will get the first draft over to you."

Specifically, the terms and language agreed to by both parties in the email exchange stated "[t]he settlement agreement will be a full release to both parties[.]" [*Id.*]. Plaintiff thereafter memorialized these terms into a formal settlement agreement and sent it to Defendant on January 14, 2025. [ECF No. 128 ¶ 12]. On January 21, 2025. Defendant's counsel replied with a revised version of the settlement agreement that struck the language previously agreed by the parties that the settlement was a "full release" to both parties. [*Id.* ¶ 13]. Despite multiple follow-up emails from Plaintiff questioning this revision, Defendant did not respond until February 13, 2025, denying that the agreement at the settlement conference included a "general release" and arguing it was only a release as to the specific claim at issue. [ECF No. 128-1 at 6–7]. When asked by Plaintiff, Defendant failed to answer what other claims were pending that it would want excluded from the agreement. [*Id.* at 9–13].

The last email between the parties on the matter was sent on February 28, 2025. [*Id.* at 13]. On October 6, 2025, Defendant filed a motion to enter the original attorney's fees and costs amount determined during the January 6 hearing with Chief Judge Altonaga. [ECF No. 127].

## LEGAL STANDARD

Courts in the Eleventh Circuit apply state contract law principles to disputes over settlement agreements. *See Resnick v. Uccello Immobilien GMBH, Inc.*, 227 F.3d 1347, 1350 (11th Cir. 2000). "In Florida, settlement agreements are favored as an efficient way to settle disputes and as a means to conserve judicial resources[,]" and "[c]ourts will enforce them when it is possible to do so." *BP Prods. N. Am., Inc. v. Oakridge at Winegard, Inc.*, 469 F. Supp. 2d 1128, 1133 (M.D.

Fla. 2007). Moreover, Florida law requires enforcement of settlement agreements without regard to whether any settlement documents were actually executed. *Robbie v. City of Miami*, 469 So. 2d 1384, 1385 (Fla. 1985); *see also Bronson v. The Prudential Ins. Co. of Am.*, No. 8:17-CV-1121-T-30AAS, 2017 WL 11718188, at *1 (M.D. Fla. Dec. 7, 2017) ("A settlement agreement does not require a [party's] signature to be enforceable.") (citing *Am. Appraisal Assocs. Inc. v. Am. Appraisals, Inc.*, 531 F. Supp. 2d 1353, 1358 (S.D. Fla. 2008)). Indeed, "[t]he law is clear that e-mail communications do not need to be reduced to a formal, written settlement agreement to become binding." *Fitzgibbon v. Winnebago Indus., Inc.*, No. 18-61476-CIV, 2020 WL 9458740, at *4 (S.D. Fla. Feb. 27, 2020).

"A motion to enforce [a] settlement agreement essentially is an action to specifically enforce a contract[.]" *Conte v. Winn Dixie Stores, Inc.*, No. 3:13-cv-463-MCR-EMT, 2014 WL 4693072, at *2 (N.D. Fla. Sept. 22, 2014). To prove the existence of a contract under Florida law, the propounding party must demonstrate the existence of: (1) an offer; (2) acceptance; (3) consideration; and (4) sufficient specification of the essential terms. *Kolodziej v. Mason*, 774 F.3d 736, 740 (11th Cir. 2014). An essential, or material, term is "[a] contractual provision dealing with a significant issue such as subject matter, price, payment, quantity, quality, duration, or the work to be done." Material Term, Black's Law Dictionary (11th ed. 2019). Moreover, "[e]ven though all the details are not definitely fixed, an agreement may be binding if the parties agree on all the essential terms and seriously understand and intend the agreement to be binding on them." *Blackhawk Heating & Plumbing Co., Inc. v. Data Lease Fin. Corp.*, 302 So. 2d 404, 408 (Fla. 1974).

**DISCUSSION**

Here, there was an enforceable settlement agreement entered during the January 9, 2025, settlement conference. During the conference the parties agreed to the material terms of the agreement, as evidenced by the near-contemporaneous writing sent by Plaintiff to Defendant on January 9, 2025, at 6:54 p.m. [ECF No. 128-1 at 1]. Plaintiff even confirmed on the record at the hearing that he had sent the email memorializing the agreement. This was ratified by Defendant when he sent back minute revisions to Plaintiff a little over an hour later and stated that the revised language "conforms with my client's understanding of the settlement and the agreement." [*Id.* at 2]. This was then accepted by Plaintiff. [*Id.* at 3]. This evidences clear offer, acceptance, and consideration between the parties. Moreover, and most importantly, Defendant made no revisions on January 9, 2025, to the language in sub-paragraph four of the agreement that "[t]he settlement agreement will be a *full release to both parties*." *See* [*id.* at 2 (emphasis added)].

Only over a month later, on February 13, 2025, did Defendant explicitly deny there being a full release of claims as part of the settlement terms. *See* [*id.* at 6]. This contradicts the material terms and language agreed to during and immediately after the settlement conference on January 9, 2025. Defendant's present contention that "there was no meeting of the minds regarding the terms of the settlement agreement" [ECF No. 133 at 5], simply does not align with the clear language in the email exchange. Simply put, after agreeing to the terms of the settlement agreement, Defendant "cannot cancel the agreement simply by changing [its] mind." *Bronson*, 2017 WL 11718188, at *1; *see also Reed By and Through Reed v. U.S.*, 891 F.2d 878, 882 n.3 (11th Cir. 1990) ("Once an agreement to settle is reached, one party may not unilaterally repudiate it."); *Fitzgibbon*, 2020 WL 9458740, at *4 ("[A party] cannot change their minds simply because they do not like the language of the settlement documents.").

Moreover, the terms of the agreement were agreed to before the undersigned and stated in open court. *Fitzgibbon*, 2020 WL 9458740, at *4 ("An announcement to the Court that a settlement has been reached clearly establishes a [party's] understanding and intent to be bound a settlement agreement.") (citing cases). Though Defendant revised some of the language after, counsel clearly stated that the revised terms, including the now-contested full release, "conform[] with my client's understanding of the settlement and agreement." [ECF No. 128-1]. Therefore, there was an enforceable settlement agreement entered on January 9, 2025.

In any event, the general release language in Plaintiff's draft agreement protects Defendant from liability on any of Plaintiff's prior claims mentioned in Defendant's reply; "the November 2013 shower leak damage claim, a 2018 termite damage claim, a 2020 water heater leak damage claim." [ECF No. 133 at 5]. The release purports to "discharge [the Releasors] of . . . all manner of action and actions . . . from the beginning of the world to the date of this Agreement. . . ." [*Id.* at 4-5]. Furthermore, Plaintiff's counsel's demonstrated efforts to finalize the agreement by repeated emails to Defendant's counsel prior to tendering payment does not support Defendant's contention that Plaintiff also breached its terms. *See Cranman v. BB&T Ins. Servs., Inc.*, No. 405CV200, 2006 WL 8434111, at *3 (S.D. Ga. Sept. 11, 2006) ("It is true that '[a] party to a contract can not cause a breach or delay in compliance by the other, and then set up the breach or delay so caused as freeing him from the contract.'") (quoting *Bourke v. Webb*, 277 Ga. App. 749, 751 (2006)).

## CONCLUSION

**THEREFORE**, Defendant Great Northern Insurance Company's Motion for Entry of Judgment on Attorney's Fees and Costs [ECF No. 127] is **DENIED** and Plaintiff Leigh Rothschild's Cross-Motion to Enforce Settlement [ECF No. 128] is **GRANTED**.

The parties shall meaningfully meet and confer and prepare a settlement agreement and release in accordance with these findings and the terms agreed upon at the January 9, 2025, hearing and as evidenced in the post-hearing emails.

**DONE AND ORDERED** in Chambers in Miami-Dade County, Florida, this 9th day of December 2025.

LISETTE M. REID
UNITED STATES MAGISTRATE JUDGE

cc. Counsel of Record